```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Patricia L. Brown,                  :

      Plaintiff,                 :

  v.                                :      Case No. 2:14-cv-604

                                     :      JUDGE MICHAEL H. WATSON
Commissioner of Social Security,           Magistrate Judge Kemp
                                     :
      Defendant.


                    REPORT AND RECOMMENDATION

                  I.   <u>Introduction</u>

    Plaintiff, Patricia L. Brown, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.  Those applications were filed on May 9, 2011, and alleged that Plaintiff became disabled on February 5, 2008.

     After initial administrative denials of her claim, on February 13, 2013, Plaintiff was given a video hearing before an Administrative Law Judge.  In a decision dated April 5, 2013, the ALJ denied benefits.  That became the Commissioner's final decision on April 21, 2014, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the administrative record on August 25, 2014.  Plaintiff filed her statement of specific errors on October 29, 2014, to which the Commissioner responded on January 30, 2015.  No reply brief has been filed, and the case is now ready to decide.

    II.   <u>Plaintiff's Testimony at the Administrative Hearing</u>

    Plaintiff, who was 43 years old at the time of the hearing and who has a tenth grade education, testified as follows.  Her

testimony is found at pages 33-46 of the administrative record.

Plaintiff last worked in a box factory. She was let go because she could not keep up with the pace of the work due to back problems. She had previously worked in a chair factory and left that job due to pain. Additionally, she had been a home health care aide. She testified that she had held a number of jobs for only short periods of time because she did not get along well with people.

According to Plaintiff, the reasons she could no longer work included back problems, including fibromyalgia and osteoarthritis. She also described pain and anxiety. She had difficulty sleeping and experienced nightmares, causing low energy in the daytime. She could not lift more than a gallon of milk and had pain even while sitting. Standing for too long made her back lock up. Further, she suffered from numbness in her right hand and arm. She told the ALJ that being out in public caused her heart to race.

Since she stopped working, Plaintiff spent most of her time at home. She occasionally went grocery shopping. She attempted to do chores, but sweeping with a broom was painful and she could not use the vacuum cleaner. Her sister, with whom she lived, did most of the housework. She explained that she had been taken off pain medication by her doctor even though she took it as prescribed, except for days when she had to drive, and that she needed knee surgery but could not afford it.

### III. The Medical Records

The medical records in this case are found beginning on page 295 of the administrative record. The pertinent records - those relating to Plaintiff's single statement of error concerning her hand and arm problems - can be summarized as follows.

Plaintiff reported left wrist pain on May 12, 2009. Notes made at that time indicated that Plaintiff thought she might have

carpal tunnel syndrome. She was positive for Tinel's sign and Phalen's test (which are both used to diagnose carpal tunnel syndrome). Arrangements were made for her to go to Adena Medical Center in Chillicothe for an EMG study. (Tr. 322). At her next appointment on July 10, 2009, she had not had the study done due to lack of insurance. She described pain shooting from her wrist to her shoulder. She still had positive Tinel's and Phalen's signs and she was wearing a support band on her wrist. Tests for weakness in either hand were negative. The diagnosis of carpal tunnel syndrome was described as "questionable." (Tr. 320). On September 20, 2009, she reported elbow pain during physical therapy. (Tr. 318).

There are a number of notes from Plaintiff's treating source over the next three years, but none of them appear to refer to any complaints of hand, wrist, or arm problems. There is a note from October 25, 2012, showing that Plaintiff was seen on that date by Dr. Agrawal with a complaint of left arm pain from the elbow to the fingertips. Her fingertips were discolored. He ordered some tests and offered a possible diagnosis of Raynaud's Syndrome. (Tr. 439-40). This appears to be the totality of the medical evidence concerning these problems.

### IV. The Vocational Testimony

Mark Pente was the vocational expert in this case. His testimony begins on page 46 of the administrative record.

Mr. Pente had submitted a case analysis sheet on which he described Plaintiff's past work as consisting of factory labor and hotel housekeeper. Both jobs were unskilled; the first was performed at the heavy exertional level, and the second was a light job. At the hearing, he also classified the job of chair assembler, testifying that it was unskilled and medium, and the job of home attendant, which was medium and semi-skilled.

Mr. Pente was then asked some questions about a hypothetical

person who could work at the light exertional level but who could never climb ladders, ropes, or scaffolds, who could occasionally stoop and frequently crouch, who had to avoid concentrated exposure to extremes of temperature, and who could not tolerate even moderate exposure to dust, fumes, gases, or poor ventilation.  The person could carry out simple, routine tasks which were not fast-paced and which did not have strict demands.  The person could tolerate only superficial interaction with others and could work only in a relatively static environment.  Mr. Pente testified that such a person could not do any of Plaintiff's past work, but he or she could work as a laundry or garment folder, a mail clerk, and a machine tender.  He provided numbers for those jobs in the State and national economies.

    The ALJ then asked about the employability of someone who was limited to sedentary work with the same restrictions.  Mr. Pente said, in response, that such a person could do the jobs of sorter, microfilm document preparer, and surveillance system monitor.  A person who needed a sit/stand option could do all of the sedentary jobs and also all of the light jobs identified except mail clerk.  A further restriction to only frequent (as opposed to constant) handling and fingering would rule out the folder and sorter jobs.  All of these jobs would tolerate one absence per month or one event of tardiness.  Finally, none of them could be done by someone who could not, for up to a third of the workday, understand or follow even simple instructions.

    V.   <u>The Administrative Law Judge's Decision</u>

    The Administrative Law Judge's decision appears at pages 11-21 of the administrative record.  The important findings in that decision are as follows.

    The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2011.  Next, he found that Plaintiff had not

engaged in substantial gainful activity since February 5, 2008, her alleged onset date.  Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including undifferentiated and mixed connective tissue disease, hypertension, ischemic heart disease, degenerative disc disease, mood disorder not otherwise specified, and anxiety disorder not otherwise specified.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

   Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff could work at the light exertional level but could never climb ladders, ropes, or scaffolds, could occasionally stoop and frequently crouch, had to avoid concentrated exposure to extremes of temperature, and could not tolerate even moderate exposure to dust, fumes, odors, gases, or poor ventilation.  He also found that Plaintiff could carry out simple, routine tasks which were not fast-paced and which did not have strict demands, and that she could tolerate only superficial interaction with others and could work only in a relatively static and nonpublic environment  The ALJ found that, with these restrictions, Plaintiff could not do her past work.  However, he also determined that Plaintiff could do the jobs identified by the vocational expert, including folder, mail clerk, and machine tender, and could do additional sedentary jobs as well.  The ALJ further found that such jobs existed in significant numbers in the regional and national economies.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

   VI. <u>Plaintiff's Statement of Specific Errors</u>

   In her statement of specific errors, Plaintiff raises a single issue: "The ALJ failed to analyze Plaintiff's hand and arm pain, failed to explain whether her provisional diagnosis of

carpal tunnel syndrome and/or Raynaud's disease were medically determinable and/or 'severe,' and further failed to properly evaluate Plaintiff's credibility with regard to these complaints, preventing meaningful judicial review." Statement of Errors, Doc. 11, at 5-6. This issue is evaluated under the following legal standard.

   Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

   Because the first part of Plaintiff's statement of error relates to the ALJ's determination that her hand and wrist

-6-

problems did not constitute a severe impairment, the Court will begin its analysis by examining the ALJ's decision on that point. In doing so, the Court is mindful that under social security law, a severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities.  20 C.F.R. §404.1520(c).  Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting.  20 C.F.R. §404.1521(b).  The question of severity is not related to the claimant's age, education, or work experience.  A nonsevere impairment is one which would not be expected to interfere with a claimant's ability to work regardless of "whether the claimant was sixty-years old or only twenty-five, whether the claimant had a sixth grade education or a master's degree, whether the claimant was a brain surgeon, a factory worker, or a secretary." Salmi v. Secretary of H.H.S., 774 F.2d 685, 691-92 (6th Cir. 1985).

   A claimant is not required to establish total disability at this level of the evaluation.  Rather, the severe impairment requirement is a threshold element which the claimant must prove in order to establish disability within the meaning of the Act.  Gist v. Secretary of H.H.S., 736 F.2d 352, 357 (6th Cir. 1984); see also Social Security Ruling 86-8 (identifying the question of whether the claimant has a severe impairment as the second step of the sequential evaluation process).  An impairment will be considered nonsevere only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." Farris v. Secretary of H.H.S., 773 F.2d 85, 90

(6th Cir. 1985), citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). The Commissioner's decision on this issue must be supported by substantial evidence. Mowery v. Heckler, 771 F.2d 966 (6th Cir. 1985).

    The administrative decision does not discuss in any detail the reason why the ALJ found Plaintiff's alleged impairments to be either severe or nonsevere. The entirety of the Step Two analysis, which follows the list of the impairments the ALJ considered to be severe, is this: "The above impairments significantly interfere with the claimant's ability to engage in basic work-related activities. Therefore, those impairments are 'severe' within the specialized meaning of the Social Security Act; however, their severity is not so great as to be disabling." (Tr. 13). The ALJ mentioned her complaint of numbness in her hands in his discussion of her residual functional capacity (Tr. 16) and noted that an examination in 2010 showed no weakness or numbness in the upper extremities, and that "[s]ubsequent examinations document similar findings." He did not mention the possible diagnosis of carpal tunnel syndrome from 2009 nor the diagnosis of Raynaud's syndrome from 2012, and he did not discuss the positive findings in the 2009 examination.

    Plaintiff asserts that this discussion was inadequate. She correctly points out that the ALJ did not provide any explanation of nonseverity which is specific to Plaintiff's hand and wrist complaints. In response, the Commissioner argues that there was no evidence in the record from which a reasonable person could have concluded that these impairments limited Plaintiff's functioning for the required twelve-month period, and that the ALJ's failure to discuss the matter is justified based on this lack of evidence. The Commissioner also contends that any "diagnosis" of carpal tunnel syndrome came from nurse practitioners rather than a doctor, and that no medical source

attributed any functional limitations to this condition. Finally, the Commissioner notes that Raynaud's Syndrome can be part of connective tissue disease, a condition the ALJ found to be severe, and the single treatment note from 2012 does not demonstrate that this condition lasted for 12 months or caused any specific limitations of functioning.

Certainly, more discussion of this issue in light of Plaintiff's testimony and the existence of some medical evidence concerning hand and wrist symptoms would have been both helpful and in keeping with the general practices of social security ALJs. See, e.g., Stone v. Colvin, 2013 WL 3730808, *15 (M.D. Tenn. July 15, 2013), adopted and affirmed 2013 WL 3981031 (M.D. Tenn. Aug. 2, 2013)(in finding that the ALJ did not err when deciding that certain impairments were not severe, "the ALJ considered each of these alleged impairments at length, supported his discussion with evidence, and explained his rationale for finding these impairments to be nonsevere"); see also Bennett v. Colvin, 2015 WL 153950, *18 (M.D. Tenn. Jan. 12, 2015)(noting that "the ALJ explicitly explained her rationale for finding Plaintiff's remaining impairments to be nonsevere"). Another Judge of this Court has found the failure to discuss whether a specific impairment - in that case, as in this one, carpal tunnel syndrome - is or is not severe can lead the Court to conclude that, in violation of 20 C.F.R. §404.1523, the ALJ did not consider the impairment at all. See Cox v. Colvin, 2015 WL 541794, *6 (S.D. Ohio Feb. 10, 2015), adopted and affirmed 2015 WL 892343 (S.D. Ohio March 2, 2015)(finding error because the ALJ "failed entirely to provide any indication that he actually considered this impairment at any step in the sequential analysis"). Other cases express similar concerns. See, e.g., Southward v. Comm'r of Social Security, 2012 WL 3887439, *12 (E.D. Mich. May 17, 2012)("the ALJ should adequately explain his evaluation of the effects of the nonsevere impairments"); Spidell

v. Astrue, 2012 WL 6595047, *8 (S.D. Ohio Dec. 18, 2012), adopt[ed and affirmed 2013 WL 97726 (S.D. Ohio Jan. 8, 2013)("an ALJ is required to consider all of a claimant's medically determinable impairments").  Considering this legal landscape, the Court is persuaded that the ALJ committed legal error because the record fails to show that, as required by law, he considered all of the impairments suggested by the record.

In this particular case, however, the Court is also persuaded that the error is harmless.  Courts have recognized that "there may be situations in which an error in an opinion is harmless because it would not change the outcome of the ALJ's decision."  Hurtado v. Astrue, 2010 WL 3258272, *11 (D.S.C. July 26, 2010), adopted and affirmed 2010 WL 3258270 (D.S.C. Aug. 16, 2010).  Here, the medical evidence upon which Plaintiff relies is insubstantial, consisting of a few nurse practitioner notes from 2009 – based entirely on Plaintiff's self-report of symptoms – and a single 2012 note.  As the Commissioner correctly notes, none of these notes provides any objective confirmation of a diagnosis, no description of limitations of any kind, and certainly no information to support a finding that this impairment (whatever it was) met the 12-month durational requirement of the Social Security Act.  Consequently, there is no reasonable prospect that a remand on this issue would alter the ALJ's findings as to severity or affect his residual functional capacity assessment.  And, contrary to Plaintiff's argument, the evidence also showed that if the ALJ had included some functional limitations from a hand or wrist impairment, such as limiting handling and fingering to frequent as opposed to constant, there would still be a number of jobs which Plaintiff could perform, including not only surveillance system monitor and microfilm document preparer, but also machine tender. Consequently, although the ALJ erred by failing to acknowledge or discuss Plaintiff's hand and wrist problems as the medical

evidence described them, on this record, that error was harmless. That does not end the Court's inquiry, however. Plaintiff also argues that she testified to such problems, and to the extent that the ALJ found this testimony not to be credible, he erred by failing to explain that portion of his decision.

A social security ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking. Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors. 20 C.F.R. §404.1529(c)(3). Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record. See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

Here, the ALJ recited, in the portion of the decision relating to credibility, that numbness in the hands and arms was one of the reasons Plaintiff identified for being unable to work. (Tr. 16). He then concluded that the objective medical evidence did not support some of her claims, noting that "musculoskeletal examinations and diagnostic testing have remained relatively within normal limits." (Tr. 17). He specifically referred to a neurological examination of July 18, 2011, which showed, among other things, "5/5 strength in the upper ... extremities." Id. He also commented that a treatment note from October, 2011 showed that Plaintiff had no complaints, which is consistent with the fact that she did not report hand or arm issues to her doctors between 2009 and 2012. Finally, the ALJ relied on the fact that Plaintiff had not, for any of her complaints, been treated other

than conservatively, with no surgeries, consistent physical therapy, or use of therapeutic devices. (Tr. 17).

Plaintiff argues, in her statement of errors, that this explanation of the ALJ's credibility finding is flawed because the ALJ misstated her testimony - she testified to additional problems with her hands apart from numbness - and because the ALJ did not recite the various factors listed in Social Security Ruling 96-7p in discussing this impairment. The Commissioner counters that the evidence cited by the ALJ to discount the totality of Plaintiff's complaints of disabling physical symptoms is, in fact, present in the record and adequately supports his conclusion, and that Plaintiff's argument fails because "she does not challenge the ALJ's thorough impeachment of Plaintiff's general allegations...." Memorandum in Opposition, Doc. 17, at 7.

The Court agrees with the Commissioner that Plaintiff's argument does not address the ALJ's general credibility finding, and that in making that finding, the ALJ discussed the relevant factors set out in SSR 96-7p. The Court has not located, and Plaintiff does not cite to, any case supporting Plaintiff's argument that such an analysis must be done on an impairment-by-impairment basis. While it is true that "blanket assertions that the claimant is not believable will not pass muster," Rogers v. Comm'r of Social Security, 486 F.3d 234, 248 (6th Cir. 2007), that is not what happened here. The ALJ's credibility analysis cited to much of the available evidence relating to hand and arm issues, as well as other physical issues, and provided reasons why the ALJ discounted her complaints. That analysis is sufficiently detailed, notwithstanding its fairly general nature, to permit meaningful review. Given that the ALJ's "findings based on the credibility of the applicant are to be accorded great weight and deference," Walters v. Comm'r of Social Security, 127 F.3d 525, 531 (6th Cir. 1997), this Court cannot

say that the ALJ erred in his assessment here.  For these reasons, the Court finds no merit in Plaintiff's single assignment of error.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant Commissioner of Social Security.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge